No. 25-2049

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

JESSE POLANSKY,
*Plaintiff-Appellant*,

v.

GEISINGER HOLY SPIRIT ET AL.,
*Defendants-Appellees*.

---

On appeal from the United States District Court
for the Middle District of Pennsylvania

---

## APPELLANT'S REPLY BRIEF

---

Julia A. Solomon-Strauss
Kathleen Foley
Eric F. Citron
ZIMMER, CITRON & CLARKE LLP
1629 K St. NW, Suite 300
Washington, DC 20006
(617) 676-9410

Lindsey Powell
ZIMMER, CITRON & CLARKE LLP
345 W. Washington Ave. #300
Madison, WI 53703
(608) 394-6750

Edwina Clarke
David Zimmer
ZIMMER, CITRON & CLARKE LLP
130 Bishop Allen Dr.
Cambridge, MA 02139
(617) 676-9421

Stephen L. Shackelford, Jr.
Nicholas C. Carullo
SUSMAN GODFREY LLP
395 9th Avenue, 50th Floor
New York, NY 10001
(212) 336-8330

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 2

I.   The Government Action Bar Does Not Apply After the
     Government Action Has Been Dismissed. ...................................................... 2

II.  The Government Action Bar Is Inapplicable Because This Suit Is
     Based on Allegations and Transactions Not Raised in the EHR
     Case.................................................................................................................. 7

     A.   This Court's interpretation of "allegations or transactions"
          in the public-disclosure-bar context also applies here. ........................ 7

     B.   Under the correct standard, this case should proceed. ........................ 11

     C.   Defendants do not even try to defend the district court's
          holding that the Stark Act claim is barred, nor could they. ............... 15

     D.   There is no host/parasite relationship here. ....................................... 16

III. This Court Should Not Decide Issues the District Court Did Not
     Reach. .............................................................................................................. 17

     A.   The first-to-file bar does not apply..................................................... 18

     B.   The complaint adequately pleads violations of the
          Two-Midnight Rule. ............................................................................ 19

     C.   The complaint satisfies Rule 9(b). ...................................................... 21

     D.   Defendants' Stark Act arguments are meritless. ................................. 23

CONCLUSION ................................................................................................. 28

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Azar*, 613 F. Supp. 3d 559 (D. Conn. 2020) ...................................... 21

*Arthur v. Maersk, Inc.*, 434 F.3d 196 (3d Cir. 2006) ................................................ 7

*Bagot v. Ashcroft*, 398 F.3d 252 (3d Cir. 2005) ........................................................ 5

*Berda v. CBS Inc.*, 881 F.2d 20 (3d Cir. 1989) ........................................................ 18

*Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562 (11th Cir. 1994) (per curiam) ........................................................................................ 17

*East Bay Mun. Util. Dist. v. Balfour Beatty Infrastructure, Inc.*, 2014 WL 2611312 (N.D. Cal. June 11, 2014) ................................................................ 24

*Eikenberry v. Callahan*, 653 F.2d 632 (D.C. Cir. 1981) ............................................ 5

*Equibank, N.A. v. Wheeling-Pittsburgh Steel Corp.*, 884 F.2d 80 (3d Cir. 1989) ...................................................................................................... 17

*Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153 (3d Cir. 2014) .............. 22, 23

*In re Nat. Gas Royalties Qui Tam Litig. (CO2 Appeals)*, 566 F.3d 956 (10th Cir. 2009) ........................................................................................ 18

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198 (3d Cir. 2002) .......... 23

*Kellogg Brown & Root Servs., Inc. v. U.S. ex rel. Carter*, 575 U.S. 650 (2015) .................................................................................................. 3, 5

*Kisor v. Wilkie*, 588 U.S. 558 (2019) ...................................................................... 2

*Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224 (2007) ........................ 9

*Singleton v. Wulff*, 428 U.S. 10 (1976) .................................................................. 17

*Southeastern Pa. Transp. Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337 (3d Cir. 2021) ........................................................................................ 7

*State Farm & Fire Casualty Co. v. U.S. ex rel. Rigsby*, 580 U.S. 26 (2016) ................................................................................................ 25

*Tri-M Grp., LLC v. Sharp*, 638 F.3d 406 (3d Cir. 2011) ........................................ 5

*U.S. ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699 (7th Cir. 2014) ...................................................................8, 9

*U.S. ex rel. Bookwalter v. UPMC*, 946 F.3d 162 (3d Cir. 2019) ............... 26, 27, 28

*U.S. ex rel. Brooks v. Stevens-Henager Coll., Inc.*, 359 F. Supp. 3d 1088 (D. Utah 2019) ...................................................................24

*U.S. ex rel. Dunleavy v. County of Delaware*, 123 F.3d 734 (3d Cir. 1997) ...................................................................8, 13

*U.S. ex rel. Est. of Gadbois v. PharMerica Corp.*, 292 F. Supp. 3d 570 (D.R.I. 2017) ...................................................................7

*U.S. ex rel. Found. Aiding The Elderly v. Horizon W.*, 265 F.3d 1011 (9th Cir. 2001) ...................................................................8, 10

*U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1 (1st Cir. 2015) ...................6

*U.S. ex rel. Hagerty v. Cyberonics, Inc.*, 95 F. Supp. 3d 240 (D. Mass. 2015) ...................................................................25

*U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir. 1993) ...........................9, 10

*U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labys., Inc.*, 149 F.3d 227 (3d Cir. 1998) ...................................................................18

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294 (3d Cir. 2016) ...................................................................8, 12

*U.S. ex rel. O'Bier v. TidalHealth Nanticoke, Inc.*, 2022 WL 264554 (3d Cir. Jan. 28, 2022) ...................................................................24

*U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023) ...........................18

*U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994) ...................................................................8

*U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149 (3d Cir. 1991) ...................................................................4

*United States v. Landmark Hosp. of Athens, LLC*, 676 F. Supp. 3d 1323 (M.D. Ga. 2023) ...................................................................24

*United States v. Walgreen Co.*, 2017 WL 10591756 (C.D. Cal. May 1, 2017) ...................................................................24

**Statutes**

31 U.S.C. § 3729(a)(1)........................................................................ 13, 18

31 U.S.C. § 3730(b)(2)........................................................................25

31 U.S.C. § 3730(b)(5)..................................................................... 4, 18

31 U.S.C. § 3730(c)(3)........................................................................25

31 U.S.C. § 3730(e)(3)........................................................... 4, 7, 10, 17

31 U.S.C. § 3730(e)(4)..........................................................................2

42 U.S.C. § 1320a-7b(b).....................................................................24

42 U.S.C. § 1395nn.............................................................................24

**Regulations**

42 C.F.R. § 411.354(c)(2)................................................................ 26, 27

42 C.F.R. § 412.3(d) (2013)................................................................21

42 C.F.R. § 412.3(d) (2016)................................................................21

42 C.F.R. § 412.3(d)(1)................................................................. 19, 20

42 C.F.R. § 412.3(d)(3)................................................................. 20, 21

# INTRODUCTION

Defendants' brief spends almost no time on this case's core issue: whether the claims are based on the same "allegations or transactions" as the claims in the EHR case and thus precluded by the government action bar. Defendants jettison this Court's decisions defining those terms in the public-disclosure-bar context and advocate for a new test, derived from a passing description in the background of a decades-old Ninth Circuit decision, that would bar any claims based on similar or overlapping facts. The Court should reject that approach and hold that the complaint is not barred because it alleges the knowing submission of false claims by entities against whom no such allegations were made in the EHR case. Defendants do not even attempt to argue that the Stark Act claim is barred.

Defendants devote much of their brief to urging this Court to affirm on alternate grounds that the district court did not reach—arguing that the first-to-file bar applies, that the complaint fails to plead a violation of the Two-Midnight Rule or satisfy Rule 9(b), and that the Stark Act claim was improperly presented and inadequately pled. Consistent with its usual practice, the Court should allow the district court to address these issues in the first instance. Defendants have identified no exceptional circumstances that warrant this Court's initial review on appeal. In any event, their arguments lack merit.

## ARGUMENT

## I.      The Government Action Bar Does Not Apply After the Government Action Has Been Dismissed.

By its terms, the government action bar applies only where the government action is still pending, and it therefore does not apply to this case.  Opening Br. 27-35.  Defendants' response is meritless.

1. First, defendants argue that Congress's choice of the present tense ("*are the subject of*") is meaningless because the subject matter of a case is always discussed in the present tense.  They imagine that a "court or professor might say, '*Marbury v. Madison* is about the principle of judicial review,'" and they note that *Kisor v. Wilkie*, 588 U.S. 558 (2019), referred to the deference principle announced in *Auer* in the present tense.  Opp. Br. 19.  But a court or professor could as easily say that "*Marbury* was about the principle of judicial review."  And the Court's present-tense description of a rule that has continuing effect does nothing to prove defendants' point about the subject matter of a particular case.  Indeed, describing *Auer*'s subject matter, rather than its rule, *Kisor* uses the past tense.  *See* 588 U.S. at 572 (disagreement concerned when police "captains *were* subject to" certain pay deductions) (cleaned up).

Second, defendants fail to explain why the government action bar's use of "are" should not be interpreted in contrast with the public disclosure bar's use of "were."  *See* 31 U.S.C. § 3730(e)(4) (providing for dismissal of action or claim "if

substantially the same allegations or transactions … *were* publicly disclosed")
(emphasis added).  Defendants attribute the difference to the fact that the public
disclosure bar applies to disclosures, "which necessarily happened before the new
case."  Opp. Br. 20-21.  But that reasoning is circular:  The relevant public
disclosure only "necessarily happened" before the case because Congress used the
past tense to make it so.  Defendants also assert that a disclosure occurs at "*one*
point in time," whereas a case's "subject-matter remains the subject-matter."  *Id.* at
21.  But a one-time public disclosure "remains" a disclosure in precisely the same
sense, leaving defendants' argument without any force.

Third, defendants are wrong (at 21-22) that *Kellogg Brown & Root Services,*
*Inc. v. U.S. ex rel. Carter*, 575 U.S. 650 (2015), forecloses Dr. Polansky's
explanation of why the word "pending" appears in the first-to-file bar but not the
government action bar.  *Kellogg* rejected the argument that the word "pending"
only served to disambiguate between the first-brought action and the subsequent
one and did not also have its plain meaning of "remaining undecided."  *Id.* at 662.
But the Court's confirmation that pending means pending does not undermine Dr.
Polansky's observation that the term provides clarity in the first-to-file context that
the government action bar's phrasing does not require.  Opening Br. 29-30.

Fourth, defendants argue that Dr. Polansky's interpretation of the
government action bar would render it a "nullity" as merely "a narrower version of

the first-to-file bar." Opp. Br. 22. That is wrong. Among other things, the first-to-file bar applies only "[w]hen a person brings an action under this subsection"—that is, under the FCA. 31 U.S.C. § 3730(b)(5). The government action bar applies more broadly—to civil suits and "administrative civil money penalty proceeding[s]" in which the government is a party. *Id.* § 3730(e)(3). "The fact that there may be some overlap [between the two bars] is inconsequential." *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1156 (3d Cir. 1991).

Finally, defendants fail to convincingly respond to Dr. Polansky's policy argument, which the government has endorsed in briefs addressing this issue. As the government has explained, when the government action is over, it is in the government's interest to allow relators to come forward with new information even about claims that were previously raised but unresolved. Opening Br. 30-32. Defendants contend (at 24) that "the bar doesn't stop the Government from doing anything." But the government cannot "do[] anything" about ongoing fraud if it does not have information to pursue it, and the government's briefing underscores that a bar that applies only to suits that mirror pending government actions creates the right incentives.

2. There is no merit to defendants' arguments (at 24-30) that the bar applies to this case even if it is limited to ongoing government suits.

First, Dr. Polansky did not waive the argument that the government action was no longer live once it was dismissed by the district court. He made a closely related argument, *see* Appx409, and "an argument omitted before the district court may nevertheless be considered where it is closely related to arguments that the parties did raise in that court." *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 417 (3d Cir. 2011) (cleaned up). That is particularly true for "pure question[s] of law" that do not require any "additional fact-finding," like whether a suit is still pending when it has been dismissed but the losing party has appealed. *Bagot v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005); *see Tri-M*, 638 F.3d at 418.

Second, defendants are wrong that a case is live for purposes of the government action bar when it is on appeal. Neither of defendants' cases (at 25) addresses this question. Defendants cite *Kellogg*'s reference to a "second complaint" that the district court dismissed under the first-to-file bar when the initial complaint's dismissal was pending on appeal. 575 U.S. at 655. But that description in the procedural history had nothing to do with the Court's holding on a distinct question concerning the third complaint. *Id. Eikenberry v. Callahan*, 653 F.2d 632 (D.C. Cir. 1981), considered the retroactivity of an amendment eliminating the $10,000 amount in controversy requirement for federal-question jurisdiction. *Id.* at 632-33. The different language of these provisions and the

different implications for the policies Congress sought to effect make them inapposite.

Third, defendants are wrong (at 26-28) that the amended complaint, filed after the appeals were over, cannot cure any issue here. Defendants discount *U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1 (1st Cir. 2015) (adopting Dr. Polansky's view on this issue) because it "did not analyze the statutory text at all." Opp. Br. 27. But *Gadbois* persuasively explained that the "weight and consistency" of the Federal Rules and case law about curing defects in pleading "undermine[d]" any contrary implication for the first-to-file bar. 809 F.3d at 5.

Fourth, defendants suggest "practical problems" with Dr. Polansky's approach, arguing that a relator would be incentivized to slow-walk her suit, wait out the government action, and amend her complaint. Opp. Br. 27-28. But defendants' proposal "would needlessly expose the relator to the vagaries of filing a new action." *Gadbois*, 809 F.3d at 6. It would also prevent a relator with fraud claims based on a dismissed government action from filing her suit while the appeal is pending, as the statute of limitations runs against and potentially eliminates her claims.

Finally, contrary to defendants' argument (at 28-30), allowing Dr. Polansky's amended complaint to cure any issue vis-à-vis the government action bar does not mean the statute of limitations is measured from amendment. There is

no dispute that the limitations period is measured from Dr. Polansky's original complaint.  *See* D. Ct. Dkt. 79 at 43.  Indeed, this Court has held that "an amendment arising out of the same conduct as that alleged in the original complaint will normally 'relate back' to the complaint for statute of limitations purposes."  *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006).  Nor is there any inconsistency; the bar and the limitations period are governed by different statutory provisions and serve different purposes.  The former allows the government to focus its limited resources on litigation it is actively pursuing, while the latter is directed towards fair notice to the defendants.  *See Southeastern Pa. Transp. Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337, 348-49 (3d Cir. 2021).[1]

## II.     The Government Action Bar Is Inapplicable Because This Suit Is Based on Allegations and Transactions Not Raised in the EHR Case.

### A. This Court's interpretation of "allegations or transactions" in the public-disclosure-bar context also applies here.

The government action bar precludes suits "based upon allegations or transactions which are the subject of a civil suit … in which the Government is already a party."  31 U.S.C. § 3730(e)(3).  This Court has defined "allegations" and

---

[1] Defendants cite (at 28-29) two district court cases holding that an amended complaint did not relate back where the initial complaint was precluded by the first-to-file bar.  But relation-back in the first-to-file context might allow a later-filing relator to secure an advantage over an earlier-filing one.  *U.S. ex rel. Est. of Gadbois v. PharMerica Corp.*, 292 F. Supp. 3d 570, 574 (D.R.I. 2017).  Relation-back when a government action has ended does not implicate the rights of other relators or the government.

"transactions" in the neighboring public disclosure bar to mean *fraudulent* allegations and *fraudulent* transactions, where a fraudulent allegation is "an explicit accusation of wrongdoing" and a fraudulent transaction means the "essential elements" of the fraud—*i.e.*, the facts "warranting an inference of fraud," even if fraud is not directly alleged. *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 303, 306 (3d Cir. 2016); *U.S. ex rel. Dunleavy v. County of Delaware*, 123 F.3d 734, 741 (3d Cir. 1997), *abrogated on other grounds by Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280 (2010). The Seventh, Ninth, and D.C. Circuits have adopted similar definitions. *See U.S. ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 707-08 (7th Cir. 2014); *U.S. ex rel. Found. Aiding The Elderly v. Horizon W.*, 265 F.3d 1011, 1015 (9th Cir. 2001); *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 653-54 (D.C. Cir. 1994). This Court should apply those definitions to the government action bar's identical terms. Defendants' arguments to the contrary are meritless.

First, defendants are wrong that Dr. Polansky identified "no case that has applied this test in the context of the government-action bar." Opp. Br. 39. The opening brief (at 36, 38, 42) cited *Absher*, in which the Seventh Circuit applied the standard to analyze the public disclosure and government action bars. Citing *Dunleavy*, *Absher* adopted essentially the same understanding of "allegations" and

"transactions" as this Court and explicitly observed that the two provisions' terms were identical. *See* 764 F.3d at 707-08. The district court's decision quoted extensively from *Absher*, Appx14-15, yet defendants' brief does not cite *Absher* once.

Second, the Court should reject defendants' conclusory argument that the definitions of "allegations" and "transactions" in *Dunleavy* and *Moore* (and *Absher*) do not apply here because the public disclosure bar and the government action bar contain "different language," and the public disclosure bar is "more restrictive." Opp. Br. 39 & n.6. Defendants do not explain how any differences matter, nor could they. *See Absher*, 764 F.3d at 707. While it may be "axiomatic that different statutory text should generally be interpreted differently," Opp. Br. 39, it is also axiomatic that "identical words and phrases within the same statute should normally be given the same meaning," *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007). These neighboring phrases are identical and should be interpreted identically.

Third, defendants' argument that this Court should apply the "test of factual similarity" from *U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir. 1993), fundamentally misreads *Kelly*. Opp. Br. 36. *Kelly* took no "approach" to analyzing the government action bar; it was concerned with the constitutionality of the FCA's *qui tam* provisions. In a single line of background reviewing "The Qui

Tam Provisions of the FCA," the court wrote, "[i]f the government files an action to enforce the FCA, a would-be relator may not bring any action based on the same underlying facts." *Kelly*, 9 F.3d at 745-46 (citing 31 U.S.C. § 3730(e)(3)). But this description of the bar—not at issue in the case—does not set forth the court's "approach."[2] In a subsequent case directly on point, the Ninth Circuit defined "allegations or transactions" to align with the approach of this Court. *Foundation Aiding the Elderly*, 265 F.3d at 1015.

Defendants' argument and tables purporting to lay out the "overlap" between the two cases likewise miss the mark. *See* Opp. Br. 32-36. The complaints have factual commonalities because both allege that EHR's methodology was flawed. But an action is barred only if it is based on the "allegations or transactions" that are "the subject of" an active government action, and those terms have specific meanings. Defendants' charts do not address this central point.

Moreover, defendants' charts paraphrase allegations at such a high level of generality that they omit critical distinctions. Defendants state that both complaints allege that "EHR clients relied upon and adopted EHR's 'fraudulent' policies and practices." Opp. Br. 32. But the cited paragraph from the EHR

---

[2] Even were this the standard, this case could proceed because the underlying facts are not "the same," as explained in the Opening Brief, at 35-45.

complaint alleges only that two clients, CHOMP and YNH, relied upon those policies, Appx178 (¶3), whereas the cited paragraphs from this complaint state that three separate entities—the hospital defendants—relied upon and adopted those policies and knowingly submitted false claims with and without EHR's involvement, Appx45-46 (¶4), Appx81-82 (¶77). Similarly, defendants represent that both complaints allege that "EHR clients knew or recklessly disregarded that adoption of EHR's recommendations led to false claims." Opp. Br. 32. But, again, the paragraph they cite from the EHR complaint mentions CHOMP and YNH, Appx178 (¶3), whereas the paragraph from the complaint here refers to the hospital defendants, Appx109-10 (¶131). The difference is important: In evaluating who is "explicitly accus[ed] of wrongdoing" in each case, and whether the same "essential elements" of fraud have been alleged, it matters *whom* the complaints allege submitted false claims, and *whom* the complaints allege did so knowingly or recklessly.[3]

### B. Under the correct standard, this case should proceed.

This Court's definition confirms that the EHR case was premised on different "allegations" and "transactions," and the government action bar therefore

---

[3] Defendants' second chart compares factual assertions with respect to Holy Spirit. Opp. Br. 33-36. Several cited paragraphs are background, irrelevant to the legal analysis. Moreover, this case's complaint includes allegations illustrating Holy Spirit's knowledge of the fraudulent scheme absent from the EHR complaint, none of which are reflected in defendants' chart. Opening Br. 35-42.

does not apply here. Among other things, the EHR complaint does not allege that any defendant here submitted a single false claim to the government, let alone that they did so knowingly. *See* Opening Br. 35-45. Nor did the EHR complaint allege (as the complaint here does) that any of the hospital defendants used EHR's erroneous methodology to generate and submit false claims on their own, without EHR's involvement. *See id.* at 18, 40, 42. And it alleged no kickback scheme and no violation of the Stark Act. *See id.* at 45-47.

Defendants fail to meaningfully engage the correct standard. They argue that the "factual allegations" underlying the claims here "are nearly *identical* to those present in [the EHR case]." Opp. Br. 40. But this Court has defined allegations as "explicit accusation[s] of wrongdoing," *Moore*, 812 F.3d at 303, and defendants' *ipse dixit* fails to take that on—who is being accused, and of what? Defendants add that the EHR case "identified the elements of the underlying fraudulent transaction, which is enough for the bar to apply even under *Dunleavy*." Opp. Br. 40. But, again, defendants do not develop this argument at all. What are the "elements," and how did the EHR complaint identify them for these defendants? Defendants provide no answer to the opening brief's analysis (at 35-42) showing that the two cases accuse different actors of different misdeeds, and that the elements of the claims asserted in EHR are not coterminous with the claims asserted here.

Defendants take a different tack elsewhere, urging that the two cases' "allegations" are the same because "[t]he allegations are Polansky's allegations about why a hospital relying on EHR's system leads to false claims under the Two-Midnight Rule." Opp. Br. 13. But this elides the critical point that an "accusation of wrongdoing" under the FCA requires knowledge. *See* 31 U.S.C. §§ 3729(a)(1)(A)-(B). A hospital may "rely[]" on EHR's system, "lead[ing] to" false claims, without the requisite knowledge. And, indeed, the EHR case alleged that only two of EHR's hospital clients—neither a defendant here—were knowingly submitting false claims. By contrast, the principal claim in this case is that, separate from any knowledge or intent on EHR's part, the hospital defendants were knowingly submitting false claims to the government.

Defendants also contend that the transactions are the same across the two cases because "[t]he transactions are EHR's transactions with its client-hospitals and the hospitals' submission of claims to the government." Opp. Br. 13. But a transaction must be "fraudulent," *Dunleavy*, 123 F.3d at 740, and nothing in defendants' description of the transactions refers to any fraud. Moreover, defendants' suggestion that both cases were concerned with *all* of EHR's client-hospitals' claims is not a fair characterization. The EHR case alleged that only two of EHR's client hospitals were knowingly submitting false claims to the

government (and named only a handful of others that were submitting false claims without knowledge); this case is concerned with three different hospitals.

Defendants argue that the EHR complaint alleged that Holy Spirit, at least, knew about EHR's fraud. Opp. Br. 42. But ¶320 of the EHR complaint—the sole paragraph on which defendants rely—does not support their argument. It states only that that Dr. Polansky raised concerns about a specific EHR certification "for a Medicare patient with chest pain" with two officials at the hospital, who agreed that the specific certification seemed wrong and created "compliance risk in this case." Appx298-99. It does not allege that the hospital knowingly submitted false claims to the government based on that or any other certification—indeed, this allegation is entirely consistent with the hospital's decision *not* to submit the certification, after recognizing the issue. Elsewhere, the EHR complaint alleges at length that EHR's clients were largely in the dark. *See* Opening Br. 18-19.

Defendants are also wrong that the EHR complaint alleged that Geisinger Medical Center and Geisinger Community Hospital knowingly submitted false inpatient claims to the government. *See* Opp. Br. 42. The EHR complaint does not identify either hospital by name, let alone allege that they submitted any false claims (knowingly or otherwise). *See* Opening Br. 37. Defendants point to ¶3 of the EHR complaint, but it says nothing about any hospital other than the two hospitals named as defendants in that case, CHOMP and YNH. *See* Appx178.

Defendants also rely on two paragraphs in the complaint in this case as supposedly alleging that "all EHR client hospitals" were on notice of EHR's fraud. Opp. Br. 42. But the question for the purposes of the government action bar is whether *the EHR complaint* alleges the hospitals' knowledge, precluding the same "allegations or transactions" here. Defendants' arguments ultimately confirm that the EHR complaint includes no such allegations or transactions.

### C. Defendants do not even try to defend the district court's holding that the Stark Act claim is barred, nor could they.

At the motion to dismiss hearing, defendants conceded that the Stark Act claim "wasn't in the first case." Appx394-95. Defendants now resist their own words, claiming that they argued only that "the addition of the Stark Act claim does not save *other* counts from dismissal," and "conceded that dismissal of this action" under the bar "would not preclude Polansky from filing a new case with the Stark theory, after presenting it to the government." Opp. Br. 49 n.7. But these concessions are consistent: Defendants stated that the government action bar applies claim-by-claim and does not bar the Stark Act claim, but they argued that it should be dismissed without prejudice for the separate reason of failure to present.

In any event, defendants have waived the argument again on appeal. They do not argue that the Stark Act claim is barred, instead raising two challenges the district court did not reach below. *See* Opp. Br. 49-63. These arguments are

meritless, and the Court should decline to consider either for the first time on appeal.  *See infra*, at pp. 23-28.

### D. There is no host/parasite relationship here.

Defendants have no real response to Dr. Polansky's argument that this case is not parasitic because it provides the government a useful or proper return.  The case identifies three hospitals who knowingly submitted false claims based on EHR's advice—both with EHR's assistance and on their own—as well as a kickback scheme.  *See* Opening Br. 49-51.

Defendants respond that "[w]ith each complaint he filed in" the EHR case, Polansky was required to disclose to the government "substantially all material evidence and information [he] possesses."  Opp. Br. 38-39 (quoting 31 U.S.C. § 3730(b)(2)).  But when Dr. Polansky filed his complaint in the EHR case in 2012, he did not have any information about Geisinger—he began working there in 2013.  Dr. Polansky added information about Holy Spirit only when the district court ordered, seven years into the litigation, that he "provid[e] in detail relevant facts" supporting his claim that EHR engaged in fraud after 2012.  *See* Opening Br. 16-17; *U.S. ex rel. Polansky v. Executive Health Res.*, No. 2:12-cv-04239-MMB (E.D. Pa.), Dkt. 165 ¶2; Appx279.  Defendants cite no case requiring Dr. Polansky to try to add Holy Spirit as a defendant to the EHR litigation at that point.  In any event, whether Dr. Polansky *could have* said more about Holy Spirit at the time is

irrelevant:  The government action bar precludes suits based upon "allegations or transactions which *are* the subject of" a government action, not allegations or transactions which *could have been* the subject of that action.  31 U.S.C. § 3730(e)(3) (emphasis added).

Dr. Polansky's opening brief also cited a line of cases holding that disclosures of a significant rate of false claims in an industry do not bar a *qui tam* suit against any member of that industry.  Opening Br. 52-54.  Defendants appear to accept this general proposition.  They dispute only whether *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562 (11th Cir. 1994) (per curiam) , is applicable here because the EHR case "mentions a[n] entity by name," whereas in *Cooper* the prior disclosure did not.  Opp. Br. 40.  But *Cooper* did not suggest that mere mention of an entity—without alleging that it committed fraud—is sufficient to trigger an FCA bar.

III.   **This Court Should Not Decide Issues the District Court Did Not Reach.**

Defendants advance four alternate grounds for affirmance, but none was addressed below.  This Court "generally decline[s] to address issues that have not been passed upon below absent exceptional circumstances," even on plenary review of solely legal issues.  *Equibank, N.A. v. Wheeling-Pittsburgh Steel Corp.*, 884 F.2d 80, 83, 86 (3d Cir. 1989); *see also, e.g.*, *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not

consider an issue not passed upon below."); *Berda v. CBS Inc.*, 881 F.2d 20, 28 (3d Cir. 1989) (remanding purely legal questions). Defendants make no argument that "exceptional circumstances" warrant discarding the usual rule here. In any event, the arguments lack merit.

### A. The first-to-file bar does not apply.

Defendants' first-to-file argument is not really an alternate basis for affirmance. Defendants link it to their government action bar argument, Opp. Br. 44, as they did below, D. Ct. Dkt. 79 at 36-37. The two arguments fall together.

The first-to-file bar states that "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). It applies where the first case's complaint contains all the "essential facts" or "material elements" of the claims in the second case. *U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labys., Inc.*, 149 F.3d 227, 232-33, 234 n.6 (3d Cir. 1998). This standard is not satisfied here, for substantially the same reasons that the "allegations" and "transactions" differ across the two complaints. Among other things, knowledge is a material element of an FCA claim, *see U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 747 (2023); 31 U.S.C. § 3729(a)(1)(A)-(B), as is a defendant's identity, *see In re Nat. Gas Royalties Qui Tam Litig. (CO2 Appeals)*, 566 F.3d 956, 962 (10th Cir. 2009). The suits have no defendants in

common, and the EHR complaint did not allege that the hospital defendants submitted false claims—much less that they knowingly did so. Nor did the EHR complaint allege that defendants engaged in a kickback scheme. *See* Opening Br. 37-39, 45-47.

## B. The complaint adequately pleads violations of the Two-Midnight Rule.

Defendants' argument (at 44-46) that the complaint fails to plead a violation of the Two-Midnight Rule is not an alternate ground for affirmance. It does not apply to the Stark Act claim or to the allegations that defendants violated federal requirements that hospitals have a comprehensive utilization review function, that treating physicians make the final determination on medical necessity, and that status orders meet medical necessity when they are written. Appx95-100 (¶¶104-11).[4]

Moreover, the argument is meritless. The Two-Midnight Rule provides that "inpatient admission is generally appropriate for payment under Medicare Part A when the admitting physician expects the patient to require hospital care that crosses two midnights." 42 C.F.R. § 412.3(d)(1). That "expectation should be based on such complex medical factors as patient history and comorbidities, the

---

[4] Defendants argue (at 11 n.1) that Dr. Polansky "waived" these allegations by describing them in a footnote in his brief, but a party waives arguments, not allegations.

severity of signs and symptoms, current medical needs, and the risk of an adverse event." *Id*. § 412.3(d)(1)(i). The complaint alleges that defendants used a system that was at odds with this rule, leading to false inpatient claims.

In particular, the complaint alleges that instead of considering the Rule's four factors to evaluate expected length of stay, defendants "ignored expected duration of medically necessary hospital services" and certified purported "high risk" patients as inpatient. Appx76 (¶67). Defendants' analysis systematically "mischaracteriz[ed] patient characteristics such as patient age, comorbidities, and past medical history as high-risk factors, and conflat[ed] long-term risk factors as short-term risk factors." Appx78 (¶70); *see also* Appx52-53 (¶13) (similar). The hospitals' classification decisions were also based on out-of-date information. Appx73-75 (¶¶63-65). For example, defendants routinely accepted EHR's inpatient certifications for patients having elective cardiac stent procedures—but the certifications were based on an erroneous "high risk" label, and the correct analysis would almost always have resulted in outpatient admission. Appx77 (¶69).[5]

Defendants appeal to the exception in 42 C.F.R. § 412.3(d)(3), which allows for inpatient admissions under certain circumstances even where a physician does

---

[5] Dr. Polansky alleged that the InterQual evidence only further indicated that the determinations were not sound. Appx86-87 (¶¶85-86).

not expect that the patient will stay for two midnights.  Opp. Br. 45.  But that exception took effect in January 2016, after the conduct complained of in this case began.  *Compare* 42 C.F.R. § 412.3(d) (2013), *with* 42 C.F.R. § 412.3(d) (2016).  Moreover, it requires that an inpatient decision be based on the same four factors as the rule and requires "medical record support for th[e] determination."  42 C.F.R. § 412.3(d)(3).  Application of this "case-by-case exception" is "rare."  *Alexander v. Azar*, 613 F. Supp. 3d 559, 586 n.28 (D. Conn. 2020), *aff'd sub nom. Barrows v. Becerra*, 24 F.4th 116 (2d Cir. 2022).  As explained, the complaint alleges that defendants did not appropriately consider the factors and improperly based decisions on out-of-date information.  P. 20, *supra*.  Whether that allegation is correct is a factual question applicable only to cases as of January 2016 and cannot be decided on a motion to dismiss.

## C. The complaint satisfies Rule 9(b).

Defendants' Rule 9(b) argument (at 47-49) is also not an alternate ground for affirmance.  That argument is limited to the allegations against Geisinger Medical Center and Geisinger Community Medical Center and the allegations that the hospital defendants independently adopted EHR's erroneous methodology.  A ruling for defendants on this issue would thus still require a remand on the Stark Act claim and the claims against Holy Spirit.

The argument in any event lacks substance. Defendants appeal (at 47) to Rule 9(b)'s requirement that an FCA relator provide "particular details of a scheme to submit false claims." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 157-58 (3d Cir. 2014). A relator is not required to identify "a specific claim for payment at the pleading stage[.]" *Id.* at 156 (cleaned up). The complaint meets this standard.

As to the two hospitals, the complaint alleges far more than that the hospitals "used EHR's services[.]" Opp. Br. 48. Defendants ignore the allegations that refer to the hospitals collectively. *E.g.*, Appx45-47 (¶¶2, 4, 6); Appx51-56 (¶¶12-15, 17-20); Appx72 (¶59); Appx122 (¶152). Considering those allegations, the complaint alleges that from at least 2014 through 2015, Appx45 (¶2), the three hospitals "sent thousands of cases to EHR that failed the hospitals' criteria for inpatient services," Appx122 (¶152), knowing those policies and EHR's review resulted in false inpatient claims, *e.g.*, Appx45-46 (¶4), and that they submitted false inpatient claims for reimbursement, Appx45-46 (¶4); Appx55 (¶17), thereby "defraud[ing] the Government," Appx72 (¶59). Those details give "the essential factual background"—the "who, what, when, where, and how of the events at

issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (quotation marks omitted).[6]

The allegations that the hospital defendants independently deployed EHR's methodology also satisfies Rule 9(b).[7]  Defendants, from at least 2014 to 2015, "wholesale adopt[ed]" EHR's "fraudulent risk-based methodology," which they applied to "cases not referred to EHR."  Appx45 (¶¶2, 4); Appx78-79 (¶72).  Dr. Polansky knew this because physicians "repeatedly told" him as much.  Appx118 (¶145).  Defendants cite no precedent for their proposition (at 49) that Rule 9(b) requires identifying "which doctors were involved" or "why any particular claim was false."  To the contrary, Rule 9(b) does not "require that the exact content of the false claims in question be shown."  *Foglia*, 754 F.3d at 156.

### D. Defendants' Stark Act arguments are meritless.

1.  Defendants are wrong that Dr. Polansky was required to present the Stark Act claim to the government.  Courts have uniformly held that "an amended complaint that is substantially similar to the original complaint" does not need to be presented to the government under seal.  *East Bay Mun. Util. Dist. v. Balfour*

---

[6] The complaint includes a list of representative false claims from Geisinger Community Medical Center, even though Rule 9(b) does not require pleading specific claims.  Appx127-28 (¶163), Appx145-46.

[7] Defendants are wrong that these allegations are "waived" on appeal.  Opp. Br. 48.  Only arguments, not allegations, may be waived, and Dr. Polansky did not waive the point.  *See* Opening Br. 11, 40, 51.

*Beatty Infrastructure, Inc.*, 2014 WL 2611312, at *3 (N.D. Cal. June 11, 2014) (citing cases). The Stark Act claim is substantially similar to the Anti-Kickback Statute claim presented in the initial complaint. The facts underlying the two claims are identical in all material respects. *Compare* Appx130-33 (¶¶168-74) *with* D. Ct. Dkt. 1 ¶¶170-76, ¶¶197-200. The two statutes address similar wrongs, *compare* 42 U.S.C. § 1395nn, *with* 42 U.S.C. § 1320a-7b(b), and courts rely on similar considerations in analyzing the claims, *see, e.g.*, *U.S. ex rel. O'Bier v. TidalHealth Nanticoke, Inc.*, 2022 WL 264554, at *2-3 (3d Cir. Jan. 28, 2022). There was no need to present the same fraudulent conduct again.

Defendants' cases do not support their argument (at 51-54) that adding a new claim, even where the factual allegations are the same, requires re-presentment. In three of those cases the parties added substantially new allegations. *See United States v. Landmark Hosp. of Athens, LLC*, 676 F. Supp. 3d 1323, 1339 (M.D. Ga. 2023) (relator "add[ed] two additional FCA claims with no apparent connection to [the] original claims"); *U.S. ex rel. Brooks v. Stevens-Henager Coll., Inc.*, 359 F. Supp. 3d 1088, 1128 (D. Utah 2019) (relator added a defendant and factual allegations "not covered by any prior pleading"); *United States v. Walgreen Co.*, 2017 WL 10591756, at *4 (C.D. Cal. May 1, 2017) (relator added "new factual allegations in support of a new theory of liability"). In the fourth, the court held that presentment was not required despite additional "detail"

because "the substance of the allegations is the same." *U.S. ex rel. Hagerty v. Cyberonics, Inc.*, 95 F. Supp. 3d 240, 263 (D. Mass. 2015).

Defendants' constitutional avoidance argument is waived and meritless. Defendants argue that the Court should dismiss the Stark Act claim because a potential constitutional issue could result from the government not "exercis[ing] meaningful oversight" over the case. Opp. Br. 57. But there was nothing new to oversee here, and the government retains the right to seek intervention at any time. *See* 31 U.S.C. § 3730(c)(3) (government can ask to be served with all pleadings and may seek intervention at any time).

Even were presentment required, this Court should not dismiss the claim. The Supreme Court held in *State Farm and Fire Casualty Co. v. U.S. ex rel. Rigsby* that a district court has discretion to determine the appropriate remedy if a relator violates the seal requirement, which is in the same provision as the presentment requirement. 580 U.S. 26, 35, 37 (2016) (discussing 31 U.S.C. § 3730(b)(2)). *Rigsby*'s reasoning applies equally to the presentment requirement. *See id.* at 34-35. For this reason, too, this issue is best remanded to the district court to evaluate in the first instance.

2. The complaint states a Stark Act claim. The Stark Act bars Medicare claims for services "referred by doctors who have a financial interest in the healthcare provider" to whom the service is referred, with some exceptions. *U.S.*

*ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 168 (3d Cir. 2019). To state a *prima facie* claim in this context, the complaint must allege (1) an unbroken chain of financial relationships between the referring physician and the healthcare provider; (2) direct compensation that "varies with the volume or value of the referrals or other business generated by the referring physician" for the healthcare provider; (3) that the compensation the referring physician receives could increase as the number or value of the physician's referrals to the healthcare provider increases; and (4) that the healthcare provider knew or recklessly disregarded the variability in compensation. 42 C.F.R. § 411.354(c)(2)(i)-(iii).

The complaint alleges all four elements: (1) Holy Spirit (the healthcare provider) pays Spirit Physician Services, which pays the referring hospitalists (the physician), Appx130 (¶169); (2) the hospitalists receive a bonus that varies with the value of their referrals (inpatient status orders—which include referral to Holy Spirit—lead to higher RVUs and higher bonuses), Appx130-31 (¶¶169-70); (3) the hospitalists' bonus compensation increases if they refer more inpatient services, Appx130-31 (¶170); and (4) Holy Spirit knew about the scheme, including because Dr. Polansky repeatedly warned the hospital of the compliance issues it created. Appx131-33 (¶¶171-74). Dr. Polansky further alleged that doctors were making improper inpatient referrals to boost their bonuses. Appx130 (¶169). The complaint thus pleads a *prima facie* Stark Act violation.

Defendants argue that the complaint does not allege the second element because it does not plead that the hospitalists' compensation "include[s] referrals as a variable," such that as referrals go up, so does compensation. Opp. Br. 60 (quoting 42 C.F.R. § 411.354(c)(2)(ii)(A)(i)). But it does. Spirit Physician Services calculated hospitalist bonuses based on total units of work (RVUs) and when a patient is referred for inpatient services, the RVUs are higher. Appx130-31 (¶170).

This Court's holding in *Bookwalter* confirms the sufficiency of the pleadings. That case involved a bonus scheme strikingly similar to what Dr. Polansky alleges here. In both cases, physicians "were rewarded or punished based on how many Work Units they generated" through their work. *Bookwalter*, 946 F.3d at 167. Like the incentive program in this case, the bonus program in *Bookwalter* "gave the [physicians] an incentive to maximize their Work Units," and led to physicians "artificially boosting their Work Units." *Id.* *Bookwalter* held that the complaint stated a claim because "every time the neurosurgeons performed a surgery or other procedure at the [defendant] hospitals, they made a referral for the associated hospital claims." *Id.* at 170 (cleaned up). The *Bookwalter* Court concluded that the bonus scheme violated the Act because it "took into account the volume and value of [the surgeons'] referrals." *Id.* at 171. This is all true here.

The *Bookwalter* Court did not hold that value-based compensation schemes violate the Act only if certain "red flags" are present.  Rather, it held that the red flags present there provided evidence of an improper scheme.  *Id.* at 171-72.  And a very powerful red flag shows that the scheme here was likewise improper:  The complaint alleges that Dr. Polansky was approached in 2014 by several hospitalists at Holy Spirit, who "complained to him that his compliance efforts were costing them tens of thousands of dollars annually because they were 'losing' inpatient cases, and that this impacted their bonus program."  Appx130 (¶169).  "The implication of what these hospitalists told Dr. Polansky is that they would not have submitted these cases as inpatient cases but for the bonus program."  Appx130 (¶169).

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment of the district court.

Date: February 2, 2026

Respectfully submitted,

/s/ Edwina Clarke
Edwina Clarke
David Zimmer
ZIMMER, CITRON & CLARKE LLP
130 Bishop Allen Dr.
Cambridge, MA 02139
(617) 676-9421
eclarke@zimmercitronclarke.com

dzimmer@zimmercitronclarke.com

Julia A. Solomon-Strauss
Kathleen Foley
Eric F. Citron
ZIMMER, CITRON & CLARKE LLP
1629 K St. NW, Suite 300
Washington, DC 20006
(202) 796-4540
jsolomonstrauss@zimmercitronclarke.com
ecitron@zimmercitronclarke.com
kfoley@zimmercitronclarke.com

Lindsey Powell
ZIMMER, CITRON & CLARKE LLP
345 W. Washington Ave. #300
Madison, WI 53703
(608) 394-6750
lpowell@zimmercitronclarke.com

Stephen L. Shackelford, Jr.
Nicholas C. Carullo
SUSMAN GODFREY LLP
395 9th Avenue, 50th Floor
New York, NY 10001
(212) 336-8330
sshackelford@susmangodfrey.com
ncarullo@susmangodfrey.com


*Counsel for Appellant Jesse Polansky*

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(b)(ii) because it contains 6,491 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman, 14-point font for text and footnotes.

3. The undersigned certifies, in accordance with Local Rule of Appellate Procedure 28.3(d), that she is a member of the Bar of the United States Court of Appeals for the Third Circuit, having been admitted on May 31, 2019.

4. The electronic version of this brief was checked for computer viruses using Windows Security, version 1.443.975.0, on February 2, 2026.

5. The hard copies of this brief are identical to the electronically filed version.


Dated: February 2, 2026      /s/ Edwina Clarke

                                   Edwina Clarke

**CERTIFICATE OF SERVICE**

I, Edwina Clarke, certify that, on this date, the foregoing document was served by filing it on the court's CM/ECF system and additionally via electronic mail to all counsel of record.

Dated: February 2, 2026        /s/ Edwina Clarke
                                      Edwina Clarke